UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY ANN GASCHO,

        Plaintiff,

v.
        Case Number 08-10955-BC
        Honorable Thomas L. Ludington

SCHEURER HOSPITAL,

        Defendant.
_____ /

# ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT

On March 6, 2008, Plaintiff Mary Ann Gascho ("Plaintiff") filed a complaint against Defendant Scheurer Hospital ("Defendant" or "Hospital"). There, Plaintiff requested the rescission of a settlement agreement in which she waived claims against Defendant, her former employer, and advanced claims of sexual harassment or employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*, retaliation for exercise of her rights under Title VII and the ELCRA, and breach of contract.

On April 25, 2008, Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant argued that Plaintiff had not tendered back the consideration received under a settlement agreement, as required under *Stefanac v. Cranbrook Educational Community*, 458 N.W.2d 56, 60 (Mich. 1990). On July 17, 2008, in lieu of a hearing on Defendant's motion, counsel for the parties met for a status conference. There, they agreed to meet and confer regarding the amount that Plaintiff must tender back to Defendant in order to pursue claims predicated on the rescission of a settlement agreement with Defendant. During a telephonic status

conference on October 1, 2008, the parties represented to the Court that Plaintiff had tendered the necessary amount into an escrow account.

On September 10, 2008, Plaintiff filed the motion to amend the complaint currently before the Court. Plaintiff seeks to amend her complaint in order to add her ex-husband, Dwight Gascho ("Gascho"), as a Defendant. Plaintiff indicates that since the time of filing her initial complaint, it has been disclosed that Gascho has "utilized his position with the Hospital so as to require the Hospital to make payments that were otherwise his obligations" under a consent judgment of divorce.

Plaintiff further alleges that Gascho has contacted their children in an attempt to have them pressure Plaintiff into dropping this lawsuit. According to Plaintiff, Gascho told his children that Plaintiff is risking their inheritance, and that he would "crush" Plaintiff if she did not drop the suit. Plaintiff alleges that Gascho's actions are an attempt to interfere with her civil rights claims and, thus, are actionable under the retaliation provisions of the ELCRA and Title VII.

Plaintiff also alleges that the Hospital and Gascho have conspired in an attempt to violate Plaintiff's civil rights and seeks to add a conspiracy count. Finally, Plaintiff seeks to add an amended Paragraph 52, which reflects that Plaintiff has tendered the consideration that she received under the release into escrow.

On September 27, 2008, Defendant filed a response to Plaintiff's motion to amend the complaint, and on October 7, 2008, Plaintiff filed a reply. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR

7.1(e)(2).

I

Plaintiff Mary Ann Gascho ("Plaintiff") worked as a registered nurse at Defendant Scheurer Hospital ("Defendant" or "Hospital") for eighteen years. Her then-husband, Dwight Gascho ("Gascho"), worked as Defendant's president and chief executive officer. According to Plaintiff's complaint, Gascho had an affair with Theresa Rabideau ("Rabideau"), an officer and vice president of Defendant. Plaintiff states that she became aware of the affair in October or November 2006, and that the affair took place on company time and premises, including on business trips. Plaintiff maintains that Gascho revealed the affair to her on November 11, 2006.

Plaintiff claims that she asked Gascho to cease the offensive conduct, and that she discussed the situation with her immediate supervisor, Lee Gascho ("Plaintiff's supervisor").[1] On November 15, 2006, Plaintiff allegedly confronted Rabideau in front of the human resources manager, Greg Foy ("Foy"). According to Plaintiff, she then met with Rabideau in Rabideau's office and at Rabideau's request. Rabdieau allegedly confessed to the affair and indicated that she would leave her position of employment at Defendant.

On December 4, 2006, Plaintiff claims that she took vacation time, due to work stress caused by the affair and the fact that Rabideau continued to work for Defendant. Plaintiff returned to work on December 11, 2006, but left again on December 13, 2006. On January 8, 2007, Plaintiff again returned to work. On January 16, 2007, Gascho allegedly confronted Plaintiff about discussing the affair with their friends. Plaintiff asserts that Gascho informed her that she could not walk through the hospital without an escort.

---

[1] Lee Gascho is a cousin of Dwight Gascho.

On January 17, 2007, Plaintiff maintains that Gascho stated that he was seeking a divorce. and Plaintiff claims that she then discussed the matter with Rabideau. During that discussion, according to the complaint, Plaintiff's husband entered Rabideau's office, barred the door, physically assaulted Plaintiff, and dragged her across the hallway. Gascho allegedly announced that Plaintiff was fired. Plaintiff states that Gascho left, collected boxes, and directed Plaintiff to take her belongings and leave. Next, Foy and Plaintiff's supervisor allegedly intervened, stating that they would handle the situation, and that they would communicate with Plaintiff in the morning after consulting with an attorney.

On January 19, 2007, Plaintiff maintains that she met with her supervisor and Foy, and that she showed them welts and contusions on her neck, shoulder, and arms. Plaintiff claims that they converted her termination into a three-day suspension, but indicated that Plaintiff would lose her job if she "did this again." Plaintiff states that she accused Foy and her supervisor of protecting Gascho and that she informed them of the difficulty she had separating the work environment from the difficulty in her personal life.

According to the complaint, Gascho presented Plaintiff with an employment separation agreement in February 2007. Subsequently, Foy and Plaintiff's supervisor allegedly presented the document to Plaintiff at her home, but she refused to sign it. Plaintiff maintains that Gascho later demanded that she sign the document. Plaintiff claims that Gascho issued several threats, including that he would "be the worst enemy you could ever imagine, the hospital has deep pockets and we always win," that she would have nothing if he lost his job, and that she could at least have an income and insurance. Plaintiff also claims that Gascho intimated that he would end the affair with Rabideau and that he might reconcile with Plaintiff if she signed the document. Plaintiff further

maintains that Gascho knew that she was taking anti-depressant medications that could affect her judgment at that time.

On March 1, 2007, as evident from Exhibit 1 to her complaint, Plaintiff executed the agreement, which was signed by Defendant's chief financial officer, Terry Lutz.[2] The agreement provides that Plaintiff will continue to receive her salary for a year, and that Defendant will reimburse Plaintiff for COBRA[3] premium payments for eighteen months. In its brief, Defendant approximates the total value of the consideration at $70,000. In exchange, Plaintiff agreed to release any and all claims that she might have against Defendant and its employees, including claims under Title VII and the ELCRA.

On October 17, 2007, Plaintiff and Gascho entered into a consent judgment of divorce. According to the judgment, Gascho "shall continue the Plaintiff's current healthcare coverage through Scheurer Hospital pursuant to COBRA for a period of thirty-six (36) months from the entry of the Judgment of Divorce."

On December 17, 2007, Plaintiff's counsel sent Defendant a letter. The single paragraph letter states in its entirety:

> Please be advised that we have been retained to represent [Plaintiff] with respect to her wrongful discharge claims. [Plaintiff] hereby tenders back the severance monies paid to her pursuant to the severance agreement. [Plaintiff] seeks to repudiate the agreement. Please be advised that if we do not her from you by January 10, 2008, we must presume that you will refuse to receive back the severance proceeds and you are rejecting the tender. Thank you for your prompt attention to this matter.

Compl., Ex. 2. According to Defendant, the letter did not contain any check, money order, or other form of payment. Yet, according to Plaintiff's complaint, she offered to tender the money back to

---

[2] In her complaint, Plaintiff alleges that she signed the agreement on February 28, 2007.

[3] Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 *et seq.*

Defendant and that this tender "fulfilled her obligation to tender back the money." Compl. ¶¶ 61-62 (citing *Keller v. Paulos Land Co.*, 146 N.W.2d 93 (Mich. 1993)).

In her response, via an affidavit, Plaintiff maintains she learned that she could seek to revoke the agreement in the summer of 2007. Plaintiff represents that she retained counsel to pursue that possibility on November 19, 2007. Plaintiff also attaches a letter that counsel for Defendant sent Plaintiff's counsel on January 7, 2008. Excepting introductory and concluding remarks, the letter states:

> The Agreement, and more particularly the Release of Claims set forth in Paragraph 7 of the Agreement, are valid, enforceable and not subject to repudiation. If [Plaintiff] desires to challenge the validity of the Release of Claims and enforceability of the Agreement, all consideration paid by Defendant will need to be returned. Specifically, consideration in the form of additional compensation pursuant to Paragraph 2A of the Agreement totals $59,446.40. In addition, [Plaintiff] elected to have Defendant pay the health insurance premium payments for COBRA continuation coverage for a period of 18 months. The COBRA premium payments are also an amount to which [Plaintiff] was not otherwise entitled to receive. The premium payments will total $9510.79 when all 18 are made. Currently, these payments are scheduled to continue through August, 2008.
>
> In the end, [Plaintiff] will have received a total amount of $68,957.19. This amount represents an amount above and beyond what [Plaintiff] was otherwise entitled to as an employee of [Defendant]. It was provided to her exchange for the promises made by in her in the Separation Agreement.
>
> As you know, even if [Plaintiff] tenders back the $68,957.19 as is required to challenged the validity of the Waiver, the Waiver and the underlying Separation Agreement are enforceable and remain in effect unless and until a Court concludes otherwise. Accordingly, it is [Defendant's] position that the Separation Agreement remains in full force and effect regardless of whether [Plaintiff] voluntarily elects to tender back all consideration paid to her under the Separation Agreement. No act or omission on the part of [Defendant] can or will be considered a waiver or repudiation of any of its rights as set forth in the valid and enforceable Separation Agreement in place between the parties.

Pl's. Resp., Ex. B [Dkt #11-4]. In a footnote, Defendant acknowledges that four payments to Plaintiff remain to be made (out of twenty-six payments).

II

Pursuant to the Federal Rules of Procedure leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Ford v. Ford*, 371 U.S. 187 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombley*, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). In

*Twombley*, the Supreme Court continued, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 127 S.Ct. at 1965 (citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

III

The Hospital contends that Plaintiff's proposed amendments to the complaint would be futile because both the Hospital and Gascho would be entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues three main points: (1) Plaintiff's sexual harassment and employment discrimination claims, as amended, are barred due to Plaintiff's failure to tender back payment prior to proceeding with her complaint, (2) Plaintiff's proposed retaliation claims against Dwight Gascho are futile, and (3) Plaintiff's proposed conspiracy claim is futile.

A

First, Defendant relies on Michigan law to argue that Plaintiff's motion to amend would be futile because Plaintiff did not tender back the consideration that she received under the release prior to, or contemporaneous with, the filing of her original complaint. Plaintiff argues that she tendered back the consideration that she received under the release via her December 17, 2007, letter by which she presumed that Defendant would reject her tender of the consideration.

It is well settled under Michigan law that a settlement agreement is binding until rescinded for cause, because this promotes settlement. *Stefanac v. Cranbrook Ed'l Cmty.*, 458 N.W.2d 56, 60 (Mich. 1990). Before a plaintiff may proceed with litigation, the plaintiff must tender back "the

amount paid," so as to return the parties to the pre-settlement agreement status quo. *Leahan v. Stroh Brewery Co.*, 359 N.W.2d 524, 525 (Mich. 1984) (citations omitted); *see also Stefanac*, 458 N.W.2d at 60; *Collucci v. Eklund*, 613 N.W.2d 402, 404 (Mich. Ct. App. 2000) ("requir[ing a plaintiff] to tender back the consideration received for the execution of the release before, or simultaneous with, the filing of his complaint").[4] A plaintiff does not have a "grace period" in which to tender back the consideration, *Stefanac*, 458 N.W.2d at 60, and an offer of tender in an amended complaint does not "relate back to the filing of [the] original complaint." *Rinke v. Auto. Moulding Co.*, 573 N.W.2d 344, 347 (Mich. Ct. App. 1997).

In her original complaint, Plaintiff alleges that she tendered back the consideration that she received under the release, via her December 17, 2007, letter, although no check or other form of payment was enclosed. The letter states that a lack of response by a certain date will lead Plaintiff to "presume that [Defendant] will refuse to receive back the severance proceeds . . . ." Pl's. Compl. Ex. 2. Plaintiff relies on *Keller v. Paulos Land Co.*, 146 N.W.2d 93, 98 (Mich. Ct. App. 1966), for its finding that "a formal tender is unnecessary where a party has shown by acts or words that tender would not be accepted." In *Keller*, the plaintiff and his attorney physically presented certified checks to the defendant's attorney, which sufficed to conclude that the plaintiff had made a legal tender. Accordingly, Plaintiff did not tender the consideration prior to filing the lawsuit, because, unlike *Keller*, Plaintiff's letter did not include any type of payment that Defendant could waive or reject.

Although Plaintiff has now tendered back the consideration, under *Stefanac*, 458 N.W.2d at

---

[4] The only exceptions to tender requirement are a defendant's waiver of the requirement and fraud in the execution. *Stefanac*, 458 N.W.2d at 60. This approach promotes the policy of not permitting the plaintiff to retain the benefit of a settlement agreement, while not permitting the defendant to do so, as it faces litigation over claims subject to that agreement. *Id.* at 61.

60, and *Rinke*, 573 N.W.2d at 347, the tender cannot save Plaintiff's state law claims because there is no "grace period" and the amended complaint would not "relate back" to her original complaint. Plaintiff's state law claims are barred under Michigan law because she did not tender back the consideration she received under the release "before, or contemporaneous with, the filing of [her] complaint." *See Collucci*, 613 N.W.2d at 404. Accordingly, it would be futile to allow Plaintiff to amend her complaint to allege state law claims against Gascho.

Nevertheless, Michigan law does not bar amendment of Plaintiff's claims under Title VII. While neither the U.S. Supreme Court, nor the Sixth Circuit have directly addressed the issue, the Sixth Circuit has generally held that "[f]ederal law controls the validity of a release of a federal cause of action." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989).[5] Additionally, in *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998), the U.S. Supreme Court rejected the tender back rule in the context of voiding releases under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The Court emphasized that requiring plaintiffs to tender back consideration received under a release would deter claims under the ADEA because "[i]n many instances a discharged employee likely will have spent the moneys received and will lack the means to tender their return." *Id. See also Hogue v. S. Ry. Co.*, 390 U.S. 516 (1968) (finding that the tender back rule does not apply under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*); *compare Samms v. Quanex Corp.*, 99 F.3d 1139 (table), 1996 WL 599821, at *3 (6th Cir. Oct. 17, 1996) (finding, in an ERISA case, that "tender back of consideration received

---

[5] Only a few federal courts have directly addressed whether the tender back rule applies to releases under Title VII. *See, e.g.*, *Fleming v. U.S.P.S.*, 27 F.3d 259, 262 (7th Cir. 1994) (applying tender back rule); *Wright v. Apple Creek Dev. Ctr.*, No. 5:06 CV 0542, 2008 WL 818790, at *3 (N.D. Ohio Mar. 24, 2008) (applying tender back rule); *Halstead v. Am. Int'l Group, Inc.*, No. Civ. 04-815-SLR, 2005 WL 8852001, at *2 (D. Del. Mar. 11, 2005) (applying tender back rule); *Rangel v. El Paso Natural Gas Co.*, 996 F.Supp. 1093, 1099 (D.N.M. 1998) (rejecting tender back rule).

for signing a release is an absolute prerequisite under Michigan and federal law").

Unlike the FELA and ADEA, Title VII does not have specific provisions regarding waivers or releases. However, the statutes are similar in that they address employment opportunities. *See Rangel v. El Paso Natural Gas Co.*, 996 F.Supp. 1093, 1096 (D.N.M. 1998). In addition, the purpose of Title VII, like the ADEA, is to make it easier for plaintiffs to bring meritorious suits. *Id.* Even assuming that federal law requires that Plaintiff tender back the consideration that she received under the release, federal law does not require that the tender back be before, or contemporaneous with, the filing of the original complaint. Accordingly, the tender back rule does not foreclose amendment of Plaintiff's claims under Title VII.

However, Title VII does not provide for individual liability. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997). Accordingly, it would be futile to allow Plaintiff to amend her complaint to include claims against Gascho under Title VII.

B

Second, Defendant argues that Plaintiff's proposed retaliation claims against Gascho are futile under both the ELCRA and Title VII. Defendant is correct that Title VII does not provide for individual liability. *See Wathen*, 115 F.3d at 404-05. However, individuals can be held liable under the ELCRA. *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 859 (Mich. 2005) (distinguishing the ELCRA from Title VII "[b]ecause Mich. Comp. Laws § 37.2201(a) provides that an 'employer' includes an 'agent' of the employer").

Assuming potential liability under the ELCRA, Defendant argues that such a claim cannot survive a motion to dismiss because Plaintiff's assertions that Gascho communicated with their children in an effort to have them convince Plaintiff to drop the suit, and that Gascho required the

-11-

Hospital to make the COBRA payments that he was obligated to pay under the consent judgment of divorce, provide no legal basis for liability. Plaintiff does not indicate how such conduct is actionable under the ELCRA when all of the alleged conduct occurred subsequent to the termination of Plaintiff's employment. Accordingly, allowing Plaintiff to amend her complaint to allege retaliation claims against Gascho under the ELCRA and Title VII would be futile.

C

Defendant argues that Plaintiff's conspiracy claim fails because Plaintiff cannot establish that the Hospital and Gascho are two separate "persons" as required for a conspiracy claim under Michigan law. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992) (defining civil conspiracy as "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means"); *Blair v. Checker Cab Co.*, 558 N.W.2d 439, 442 (Mich. Ct. App. 1996) (finding that "an agent or employee cannot be considered a separate entity from his principal or corporate employer, respectively, as long as the agent or employee acts only within the scope of his agency of employment") (citations and quotations omitted).

Defendant also argues that Plaintiff's civil conspiracy claim must fail because Plaintiff does not allege an underlying tort. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (finding that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort") (quotations omitted).

Plaintiff did not directly respond to Defendant's arguments. Rather, Plaintiff emphasizes that the Hospital has breached the separation agreement by making premium payments to the insurer, instead of directly to Plaintiff. Plaintiff alleges that this was done by Gascho and the Hospital so

-12-

that Gascho could avoid his obligation to make COBRA payments on Plaintiff's behalf. The Court finds that these allegations are insufficient to support a conspiracy claim under Michigan law. Accordingly, it would be futile to allow Plaintiff to amend her complaint to include a conspiracy claim.

IV

Based on the above, the Court will deny Plaintiff leave to amend the complaint in order to add her ex-husband, Dwight Gascho, as a Defendant to her ELCRA and Title VII discrimination and retaliation claims, and to add a conspiracy count, because these claims could not survive a 12(b)(6) motion to dismiss. However, Plaintiff's claims against the Hospital remain viable under Title VII, and the Court will grant Plaintiff leave to amend the complaint to reflect the fact that she has now tendered back the consideration that she received under the release.

Accordingly, it is **ORDERED** that Plaintiff's motion to amend the complaint [Dkt. # 16] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall file the amended complaint on or before **October 27, 2008**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 20, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS

---